UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TOYOTA LEASE TRUST,

                            Plaintiff,           **REPORT AND
RECOMMENDATION**

   -against-

VILLAGE OF FREEPORT, ALL COUNTY      20-CV-2207 (DG) (SIL)
HOOK UP TOWING, INC. d/b/a ALL
COUNTY TOWING & RECOVERY AND
JOSEPH CALVAGNO,

                        Defendants.
-----------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this civil rights action, on referral from the Honorable Diane Gujarati for report and recommendation are: (i) Plaintiff Toyota Lease Trust's ("Plaintiff" or "Toyota") motion for partial summary judgment as to (a) its first cause of action against Defendant Village of Freeport ("Defendant" or "Freeport" or the "Village") for deprivation of property by unreasonable seizure and without due process of law in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and (b) as to its third cause of action seeking a declaratory judgment that the Village's policy of conducting warrantless seizures of "Scofflaw" vehicles is unconstitutional; and (ii) Freeport's cross-motion for summary judgment as to all of Plaintiff's claims.  *See* Motion for Summary Judgment by Toyota Lease Trust ("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [58]; Response in Opposition and Cross-Motion for Summary Judgment by Village of Freeport ("Defendant's Motion" or "Def. Mot."), DE [59].

1

By way of Complaint dated May 15, 2020, Toyota commenced this action against Freeport, All County Hook Up Towing, Inc. d/b/a All County Towing & Recovery ("All County") and Joseph Calvagno ("Calvagno") pursuant to 42 U.S.C. Section 1983 ("Section 1983") for: (i) deprivation of property by unreasonable seizure and without due process of law in violation of the Fourth and Fourteenth Amendments; (ii) deprivation of property by unreasonable seizure and without due process in violation of New York Constitution Article I Sections 6 and 12; (iii) declaratory relief against all Defendants that New York State Vehicle and Traffic Law ("NYVTL") § 1224 as applied by Freeport through its "Scofflaw" policy is unconstitutional under the United States and New York State Constitutions and that Defendants are liable under Section 1983 for all damages and attorneys' fees incurred; (iv) replevin; and (v) violation of New York State General Obligations Law § 349 against All County and Calvagno. *See* Complaint ("Compl."), DE [1]. The claims against All County and Calvagno were dismissed by stipulation, which was so ordered by Judge Gujarati on June 13, 2022. *See* DE [55], June 13, 2022 Electronic Order. On July 8, 2022, the parties filed their motions for summary judgment. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem."), DE [58-1]; Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support the Cross-Motion of Defendant Freeport ("Def. Mem."), DE [59-1]. Judge Gujarati referred the motions to this Court on October 28, 2022. *See* October 28, 2022 Electronic Order. For the reasons set forth below, the Court respectfully recommends: (i) granting Plaintiff's Motion as to its first and third

causes of action and declaratory relief, but denying it as to compensatory damages; (ii) denying Defendant's Motion in its entirety; (iii) entering Toyota's proposed declaratory judgment; (iv) ordering Freeport to submit proposed legislation within 60 days; and (v) permitting Plaintiff to request an inquest on damages within 60 days.

## I.    BACKGROUND

### A. Relevant Facts

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements.  *See* Rule 56.1 Statement of Material Facts by Toyota ("Pl. 56.1"), DE [58-2]; Defendant Freeport's Response to Toyota's Rule 56.1 Statement and Counter Statement of Material Facts ("Def. 56.1" and "Def. Counter 56.1"), DE [59-2]; Toyota's Response to Freeport's Counter Statement of Material Facts ("Pl. Counter 56.1"), DE [60-1].  Unless otherwise noted, these facts are not in dispute.

#### 1. *The Parties and the Lease*

Plaintiff is a Delaware business trust and holds titles to leased vehicles in the United States.  Pl. Counter 56.1 ¶ 2.  Toyota Motor Credit Corporation ("TMCC") is a California corporation wholly owned by Toyota Financial Services International Corporation ("TFSIC") and is Plaintiff's parent company which services its lease contracts.  *Id*. ¶ 1.  Freeport is a duly organized municipal corporation under New York state law.  *Id*. ¶ 5.  All County is a towing company that has a contractual agreement with Freeport for towing and impounding services.  Def. 56.1 ¶¶ 39-40.  Calvagno is the owner of All County.  Compl. ¶ 15.

3

On or about October 6, 2018, Millennium Super Store, LLC d/b/a Millennium Toyota Scion (the "Dealership") leased a 2018 Toyota Camry bearing VIN 4T1B11HK2JU149713 (the "Vehicle") to non-party customers Dorothy Kinsey and Sandra D. Kinsey (the "Lessees"). Def. 56.1 ¶¶ 1-2. The lease ("Lease Agreement") provided for monthly payments of $369.00 beginning on October 6, 2018, and the Dealership assigned the agreement to Plaintiff. *Id*. ¶¶ 2-3. It further provided that a default included a failure to make a payment or a seizure of the Vehicle, which triggered a right to possession by Toyota among other remedies. Declaration of Adam Davis ("Davis Decl."), DE [58-19], Ex. A; Declaration of Helen Benzie Esq. ("Benzie Decl."), DE [59-9], Exhibit ("Ex.") E ("Lease Agreement") ¶ 29. On or about November 5, 2018, the New York State Department of Motor Vehicles ("NYSDMV" or "DMV") issued a title with Toyota Lease Trust as the owner of the Vehicle. Def. 56.1 ¶ 4; Davis Decl. Ex. B. At all relevant times, Plaintiff remained the titled owner and lessor of the Vehicle. Def. 56.1 ¶ 5.

Dorothy and Sandra Kinsey defaulted on the Vehicle's payments beginning in on December 6, 2019, although Freeport claims that the lease was "in arrears from the date the second payment was due" as shown by late charges on the account. *Id*. ¶ 7; Pl. Counter ¶ 24; *see also* Benzie Decl. Ex. F. As of February 5, 2020, the Vehicle had an odometer reading of 26,269 miles. Pl. Counter ¶ 16.

### 2. *Freeport's Seizure of the Vehicle and Its Relevant Policies, Customs and Practices*

On February 5, 2020, All County towed the Vehicle at Freeport's direction. Def. 56.1 ¶¶ 9-10. The Village sought to impound the Vehicle under its "Scofflaw"

policy because Sandra Kinsey had over $1,000 in unpaid tickets, and the Village "followed its standard practice for impounding" in relation to the Vehicle. *Id.* ¶¶ 15-17. Freeport's Scofflaw policy includes: (i) keeping an updated "list of all Scofflaws" which are individuals owing more than $1,000.00 in outstanding tickets associated with the vehicle; (ii) locating such a vehicle through a license plate reader ("LPR") system; and (iii) impounding the vehicle, located via a "hit" by the LPR system on a public road. *Id.* ¶ 16, 29; Declaration of Nicholas A. Duston, Esq. ("Duston Decl."), DE [58-3], Ex. E.

All County towed and kept the Vehicle in its lot pursuant to a contractual agreement with Freeport. Def. 56.1 ¶ 24; *see also* Duston Decl. Ex. O; Declaration of Pamela Walsh Boening ("Boening Decl.") Ex. A. The contract provides that All County is to pay Freeport $451 per tow, a qualified employee is available by phone 24 hours per day and seven days per week without exception, all calls for towing services must be responded to within 30 minutes, and All County will only charge vehicle owners, not Freeport, for towing and impound services at a rate specified by the Village pursuant to Village Code § 191, which regulates towing charges. Def. 56.1 ¶ 40. In sum, Freeport provides no monetary compensation to All County for towing and impounding vehicles, and All County charges to car owners $25 per pay for storage of a "disabled vehicle" and $50 per day for an impounded vehicle. *Id.* ¶¶ 40-43. Freeport, however, maintains control of all vehicles impounded and held by All County, and the Village does not permit the release of an impounded vehicle to anyone until all tickets associated with that vehicle are paid. *Id.* ¶¶ 44-45.

The Village claims that on the day of impoundment, February 5, 2020, the Vehicle was given a ticket for failure to display a current registration sticker as indicated in DMV records. *Id.* ¶¶ 17-19a, (citing Declaration of Carl Hetzel ("Hetzel Decl."), DE [59-3], Ex. A). Toyota disputes this claiming that Freeport's documents show that a "DMV Registration Detail" run on the date of impoundment indicated that the registration status was "valid," and on All County's form under "Reason for Tow," the "unregistered" box is not checked. Def. 56.1 ¶¶ 17-19a (citing Duston Decl. ¶¶ 4, 12, Exs. C and K). Freeport further claims that the Vehicle lacked a valid inspection sticker, no insurance code was on file and that it had been deemed abandoned and was blocking traffic, which Toyota disputes. Def. 56.1 ¶ 19. The Village does not dispute, however, that the Vehicle was impounded pursuant to its Scofflaw policy. Def. 56.1 ¶¶ 15-17, 19b-c; Pl. Counter 56.1 ¶¶ 11-12; *see also* Duston Decl. Exs. E-J. On March 3, 2020, a Lessee of the Vehicle paid the February 5, 2020 expired registration ticket. Pl. Counter ¶ 13.

Freeport did not obtain a warrant either before or after impounding the Vehicle or arrange a hearing concerning its impoundment as with other Scofflaw vehicles. Def. 56.1 ¶¶ 21-23. Similarly, Toyota failed to request a hearing or send a written notice of claim to the Village or the New York State Attorney General, of the alleged unconstitutional Scofflaw policy. Pl. Counter 56.1 ¶¶ 6, 8. Freeport holds hearings regarding a claimant's liability as to the ticket(s) associated with a vehicle if requested by a person claiming the vehicle, Pl. Counter ¶¶ 33-34, but the Village does not have a procedure for a hearing on Scofflaw seizures, such as raising a challenge

6

to:  (i) the seizure itself, (ii) the towing and storage charges, or (iii) other conditions attached to release of the vehicle, as distinct from the ability to challenge liability for the parking tickets.  *Id*. ¶ 35.

Toyota initially learned of Freeport's impounding of the Vehicle from an unidentified individual calling on the Lessee's behalf on or about February 14, 2020 who notified Plaintiff that the car was "picked up by the city."  Def. 56.1 ¶ 11.  In addition, All County sent a letter to Toyota dated February 10, 2020 indicating that the Vehicle had been "taken into custody by this company and has been held in our impound yard since: 2/5/2020," that it "claims a lien on this vehicle," and indicating that it would be "released to the owner" only "upon full payment of all charges accrued . . . ."  *Id*. ¶ 12.  The parties do not indicate when Toyota received this letter.  The charge total, separate from the parking or other tickets associated with the Vehicle, was for $581.14 as of the date of the letter, increasing at a rate of $50 per day.  *See* Duston Decl. Ex. D.

Plaintiff claims that it sought to repossess the Vehicle in or before February 2020 around the time that Freeport impounded the Vehicle.  Def. 56.1 ¶ 8.  Defendant counters that while Toyota's documents indicate it was seeking to repossess the Vehicle in response to a request on behalf of one of the Lessees, and Toyota had no contact with the Lessees until the February 14, 2020 phone call, which was after the Vehicle was impounded.  *Id*.  Freeport further claims that it is Toyota's policy to not begin repossession until after an account is 80 days past due, which Plaintiff disputes,

although late payments on the Vehicle began in November 2018, which is more than one year prior to impoundment.  Pl. Counter ¶ 25; *see* Benzie Decl. Exs. G-H.

Toyota later received correspondence from the Village regarding the Vehicle dated March 25, 2020, which was 49 days after its impoundment.  Def. 56.1 ¶¶ 13-14. The one-page letter stated:

> You are hereby notified that the above-described motor vehicle, for which you are listed as the last registered owner, has been impounded by this Department.
>
> You are therefore being notified to reclaim the said vehicle forthwith. As pursuant to Section 1224 of the Vehicle and Traffic Law of the State of New York, you are liable for the costs of removal and storage of said vehicle.
>
> YOUR FAILURE TO CLAIM THIS VEHICLE WILL NOT ABSOLVE YOU OF YOUR LIABILITY TO PAY THE REMOVAL AND STORAGE CHARGES FOR THIS VEHICLE.
>
> The Village of Freeport shall acquire title to this vehicle unless claimed within ten (10) days of the above date. In such event the vehicle will be destroyed.
>
> This is your final notice, you will receive no further communications regarding this matter.

*Id*. ¶ 26; *see also* Duston Decl. Ex. M.  Freeport refused to permit Toyota to retrieve the Vehicle unless Plaintiff agreed to pay various outstanding fines, penalties, towage and storage charges.  Def. 56.1 ¶ 27.

On April 28, 2020, Toyota's counsel emailed Officer Giovanniello at the Freeport Police Department requesting the "impounded vehicle release procedure" and reason for the Vehicle's impoundment.  *Id*. ¶ 36; *see* Duston Decl. Ex. N; Hetzel Decl. Ex. A.  The parties dispute the Village's regular practice as to notice for this

particular procedure, but in any event, they do not dispute that Freeport's written procedure, which Toyota received via email, for the handling of seized vehicles states:

> IMPOUNDED VEHICLE RELEASE PROCEDURE
>
> 1. Respond to the Freeport Municipal Building... Pay a $117.00 Impound Release Fee (Cash Only) at the front counter.
>
> 5. You will be given an impound release form.... You will then be directed to the private impound facility that has custody of your vehicle. You are responsible for any and all charges incurred at this facility.

Def. 56.1 ¶ 36; Duston Decl. Ex. N; Hetzel Decl. Ex. A.  Accordingly, Freeport requires a payment of a $117 Impound Release Fee, payment of the past due tickets that led to the seizure, and any fees that may be owed for towing and storing the impounded vehicle to Freeport's impound facility, All County, pursuant to the towing contact before releasing a vehicle.  Def. 56.1 ¶¶ 37-39.

The Village claims that Toyota issued a payment guaranty to retrieve the Vehicle on February 28, 2020, which Plaintiff disputes claiming the agreement was between Toyota's parent company, TMCC, and All County.  Pl. Counter ¶ 17.  Plaintiff further claims that its parent company agreed to hold harmless and indemnify All County for any suits relating to All County's act of releasing the Vehicle to Toyota. *Id*.  All County, however, did not release the Vehicle until after the filing of this lawsuit, breaching the agreement's terms.  *Id.*

Finally, counsel for Toyota, Freeport and All County agreed, after this action had been filed, for Plaintiff to recover possession of the Vehicle *pendente lite*.  This agreement was reached on October 22, 2020, and Toyota recovered the Vehicle on or about November 11, 2020.  Def. 56.1 ¶ 28.  Freeport claims it "released" the Vehicle

to All County on October 7, 2020, which Toyota disputes as All County had possession of the Vehicle at all times and no evidence supports this assertion. Pl. Counter ¶ 15. The parties agree that All County told Toyota to retrieve the Vehicle on October 22, 2020, and Toyota picked it up on November 11, 2020. *Id.*

### 3. *Toyota's Claimed Damages*

The J.D. Power Used Car Guide (the "Guide") is a vehicle pricing service that is recognized as an authoritative standard in the industry, and is an accurate indicator of used vehicle pricing, providing prices based upon comparable vehicle sales. Def. 56.1 ¶ 48. The pricing calculations are based on hundreds of thousands of motor vehicle sale transactions, and provide precise pricing based on a sufficiently large volume of data so as to remove the need for statistical interpretation, allowing pricing calculations free from opinion or bias. *Id.* The Guide lists various auction values which Toyota likely would have obtained had the Vehicle been returned to Plaintiff's possession on the date of Freeport's letter to Toyota, March 25, 2020, and when Plaintiff was informed by All County that it could retrieve the Vehicle, October 22, 2020. *Id.* ¶ 49. Using the average auction value, Toyota claims that Guide shows the value of the Vehicle at $16,254 as of March 25, 2020 and $15,236 as of October 22, 2020. *Id.*; *see also* Davis Decl. Ex. E. Freeport claims the Guide shows the value was $16,746 as of March 25, 2020, $17,358 as of October 7, 2020, and $16,534 as of October 22, 2020. Def. 56.1 ¶ 49. As a result, the parties dispute the reasonable estimate of the depreciation of the value of the Vehicle while it was in Freeport's custody. Toyota claims it is $1,018. *Id.* ¶ 52. Defendant claims it was $775 and

10

disputes the period Plaintiff uses for this calculation, claiming it should be from March 25, 2020 to October 7, 2020 when it "released" the Vehicle to All County and, therefore, was a gain of $612. *Id.* ¶¶ 51-54; Benzie Decl. Exs. O-S.

Toyota further claims that had it been able to auction the Vehicle, which is its practice as to repossessed vehicles, and re-invest in a performing lease with a similar payment stream of $369 per month when the car was eventually recovered seven months later, its "loss of use" damages is $2,583. Def. 56.1 ¶ 54; Pl. Counter ¶ 26. Finally, the parties do not dispute that Freeport received $451 from All County's towing and storage fees. Def. 56.1 ¶ 50. The Vehicle has since been sold for $14,800 and is now registered out of state. Pl. Counter ¶ 20.

### B. Procedural History

Based on the above, Toyota commenced this action by way of Complaint dated May 15, 2020 against Freeport, All County and Calvagno for: (i) deprivation of property by unreasonable seizure and without due process of law in violation of the Fourth and Fourteenth Amendments; (ii) deprivation of property by unreasonable seizure and without due process of law in violation of New York Constitution Article I Sections 6 and 12; (iii) declaratory relief against all Defendants that New York State Vehicle and Traffic Law §1224 is unconstitutional, as applied pursuant to Freeport's Scofflaw policy, under the United States and New York State Constitutions and that Defendants are liable under Section 1983 for all damages and attorneys' fees incurred; (iv) replevin; and (v) violation of New York State General Obligations Law § 349 against All County and Calvagno. *See* Compl. All County and Calvagno

answered on July 17, 2020, and Freeport answered on July 23, 2020. *See* DEs [17], [18]. Discovery commenced, which this Court oversaw, and closed on December 1, 2021. *See* DE [37]. The claims against All County and Calvagno were dismissed by stipulation which was so ordered by Judge Gujarati on June 13, 2022. *See* DE [55]; June 13, 2022 Electronic Order.

On July 8, 2022, the parties filed their motions for summary judgment. *See* Pl. Mot.; Def. Mot.; Reply in Further Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply"), DE [60]; Reply Memorandum of Law in Support of Defendant Freeport's Cross Motion ("Def. Reply"), DE [61]. Toyota seeks declaratory relief and compensatory damages as to counts one and three. *See* Pl. Mem. Freeport seeks summary judgment as to all of Plaintiff's claims. *See* Def. Mem. Judge Gujarati referred the motions to this Court on October 28, 2022. *See* October 28, 2022 Electronic Order. For the reasons set forth below, the Court respectfully recommends: (i) granting Plaintiff's Motion as to its first and third causes of action and declaratory relief, but denying it as to compensatory damages; (ii) denying Defendant's Motion in its entirety; (iii) entering Toyota's proposed declaratory judgment; (iv) ordering Freeport to submit proposed legislation within 60 days; and (v) permitting Plaintiff to request an inquest on damages within 60 days.

## II.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears

the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Village of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d

13

Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

### III. DISCUSSION

#### A. Plaintiff's Standing

Initially, Defendant seeks summary judgment as to all of Plaintiff's claims on standing grounds arguing that Toyota lacked a present possessory interest in the Vehicle and thereby lacked a constitutionally protectible right. *See* Def. Mem. at 12-15. Plaintiff counters that non-possessory interests are protected by the Constitution, and, in any event, Toyota's interests in the Vehicle were possessory. *See* Pl. Reply at 3-6.

To establish standing, a party "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Backus v. Village of Charlotte*, 75 F. App'x 820, 821 (2d Cir. 2003); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). The Constitution protects an owner's rights to property, such as a vehicle, that has been leased, including the right of sale and the right to receive rent. *See U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 54, 114 S. Ct. 492, 501 (1993); *HVT, Inc. v. Port Auth. of New York and New Jersey*, 2018 WL 3134414, at *7 (E.D.N.Y. Feb. 15, 2018), *R&R adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) (A leasing company that owns a vehicle "has a protected possessory interest in the Subject Vehicle.") (citing *Alexandre v. Cortes*, 140 F.3d 406,

411 (2d Cir. 1998); *Harrell v. City of New York*, 138 F. Supp. 3d 479, 493 (S.D.N.Y. 2015)).

Property interests "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Santander Consumer USA, Inc. v. County of Suffolk*, No. 20-CV-2656(JS)(AKT), 2021 WL 4480574, at *6 (E.D.N.Y. Sep. 30, 2021) (quoting *Ford Motor Credit Co. v. New York City Police Dep't*, 394 F. Supp. 2d 600, 609 (S.D.N.Y. 2005)). Under the New York Vehicle and Traffic Law § 2101(g), which concerns leased vehicles, the title holder, not the lessee, is considered to be the vehicle's owner. NYVTL § 2101(g).

Applying these standards, the Court concludes that Toyota has a legally protected property interest and, therefore, has standing to pursue its claims against Freeport. Initially, Plaintiff has sufficiently established, and the parties do not dispute, that it had title over the Vehicle at all relevant times. Def. 56.1 ¶¶ 4-5; *see also* Def. Mem. at 12. While the Vehicle was leased to non-parties, that does not extinguish Toyota's legally protected right in its property, and these rights include a possessory right to the Vehicle, right of sale and right to receive rent. This is further established by the Lessee's default on payments beginning on December 6, 2019 and by Freeport's impoundment, which was also considered a default under the Lease Agreement, and triggers Plaintiff's right to possession. Def. 56.1 ¶¶ 7-8; *see also* Lease Agreement ¶ 29. While Freeport contends that Toyota's parent company has a

15

discretionary policy of not repossessing a vehicle until approximately 80 days after default, as evidenced by its SEC Form 10-K,[1] this does not extinguish Toyota's possessory interest in the Vehicle.  *See* Benzie Decl. Ex. G.  Further, the parties do not dispute that Freeport seized the Vehicle and retained possession of it for seven months making the injury concrete and actual.  Accordingly, the Court concludes that Toyota has standing to pursue its claims.

### B.  Plaintiff's Section 1983 Claims

Next, Toyota and Freeport cross-move for summary judgment on the Section 1983 claims alleging deprivation of property by unreasonable seizure in violation of the Fourth Amendment and without due process in violation of the Fourteenth Amendment.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under Section 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a

---

[1] Plaintiff argues that this information was not exchanged during discovery, and should not be considered in deciding the parties' motions.  *See* Pl. Reply at 7.  The Court acknowledges this issue, but notes that these documents do not have any bearing on the Court's conclusions in its Report and Recommendation.

person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

Under *Monell v. Dept. of Soc. Serv. of City of New York*, municipalities and local government entities may be held liable under Section 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 590, 98 S. Ct. 2018, 2019-20 (1978). The "policy or custom" element may be established by demonstrating: (1) "a formal policy officially endorsed by the municipality"; (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).

Moreover, the "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Wiltshire v. Williams*, No. 10-cv-6947, 2012 WL 899383, at *10 (S.D.N.Y. Mar. 16, 2012) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights") (internal quotation omitted).

### 1. *Plaintiff's Fourth Amendment Claim*

As for its Fourth Amendment claim, Toyota argues that the warrantless seizure of its and other Scofflaw vehicles because of fees and fines does not fall within a recognized exception to the Fourth Amendment's warrant requirement, and Freeport's continued detention beyond any initially legitimate justification also violated the Fourth Amendment. *See* Pl. Mem. at 13-17. Plaintiff further argues that Defendant's constitutional deprivation was pursuant to the Village's formal Scofflaw policy and, therefore, was the moving force behind the deprivation of Toyota's rights. *Id*. 17-19, 27-29. The Court agrees.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984); *see also Harrell v. City of New York*, 138

F. Supp. 3d 479 (S.D.N.Y. 2015), *on reconsideration in part sub nom. Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015) ("The fact that the vehicles are seized in public is of no moment."). The Fourth Amendment protects against any government interference with personal property, even if an officer has merely found that property in public. *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 68, 113 S.Ct. 538, 547 (1992). As a result, warrantless seizures of personal property are unreasonable within the meaning of the Fourth Amendment unless an exception to the warrant requirement applies. *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015). These exceptions include, *inter alia*: (i) whether the property is contraband, evidence of a crime, or otherwise subject to forfeiture; or (ii) other exigent circumstances, such as a danger to society. *See Harrell*, 138 F. Supp. 3d at 490-91.

Moreover, even where the government validly seizes property it nonetheless continues to have an "ultimate obligation to return it." *City of W. Covina v. Perkins*, 525 U.S. 234, 240, 119 S. Ct. 678, 681 (1999); *see also Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368, 137 S. Ct. 911, 919 (2017). As a result, "[i]f the government . . . cannot establish probable cause for the initial seizure or offer post-seizure evidence to justify continued impoundment, retention of the seized property runs afoul of the Fourth Amendment." *Krimstock v. Kelly*, 306 F.3d 40, 50 (2d Cir. 2002); *Santander Consumer USA, Inc.*, 2021 WL 4480574, at *11.

Applying these standards, the Court concludes that Freeport's Scofflaw policy as applied in this case violated Plaintiff's Fourth Amendment rights as a matter of law. Defendant seized the Vehicle pursuant to its Scofflaw policy and failed to obtain

a warrant for the seizure. Further, the Village offers no exception to the warrant requirement, and the Court determines that none applies here. While Freeport contends that the Vehicle had an expired registration sticker displayed, no insurance code was on file, and that it had been deemed abandoned and was blocking traffic, it does not dispute that the Vehicle was located and impounded pursuant to its Scofflaw policy. Def. Mem. at 6; Def. 56.1 ¶¶ 15-16. Further, the February 5, 2020 ticket for an expired registration would not have been issued if the car had not been located using the LPR system under the Scofflaw procedures, and an expired registration sticker similarly does not lead to an appropriate warrantless seizure. Finally, the expired registration ticket was paid on or about March 3, 2020, Pl. Counter ¶ 13, meaning Freeport's continued retention after that date—which is prior to when Freeport sent a letter to Toyota on March 25, 2020—did not relate to the Vehicle's registration sticker and/or insurance. This continued retention, therefore, is a separate Fourth Amendment violation. As a result, no material facts are in dispute as to Freeport's warrantless seizure and seven-month retention of the Vehicle establishing a constitutional deprivation under the Fourth Amendment. Moreover, as the Village admits, the seizure was carried out pursuant to its Scofflaw policy, which establishes the second element for the Section 1983 claim. Accordingly, the Court concludes that summary judgment in favor of Plaintiff on liability is warranted as to its Fourth Amendment cause of action.

2. *Plaintiff's Fourteenth Amendment Claim*

Next, Plaintiff argues that Freeport deprived Toyota of due process by failing to provide timely notice and a hearing before a neutral decisionmaker to review the warrantless seizure. *See* Pl. Mem. at 19-27. Plaintiff also contends that Freeport was required to have such a hearing prior to seizing the vehicle and turning it over to All County. *Id*. 25-27. Plaintiff further argues that this unconstitutional policy was the moving force behind the deprivation of Toyota's rights. *Id*. at 27-29. Again, the Court agrees.

The due process clause of the Fourteenth Amendment requires that individuals "receive notice and opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop*., 510 U.S. 43, 48, 114 S. Ct. 492, 498 (1993); *Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S. Ct. 2105, 2113 (1991) ("our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."). "To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment," courts (1) "identify the property interest involved," and (2) "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (citing *Harhay v. Town of Ellington Bd. of Educ*., 323 F.3d 206, 212 (2d Cir. 2003)). In evaluating the constitutional adequacy of due process procedures, the *Mathews v. Eldridge* framework applies, and the Court must balance:

> (1) the private interest that will be affected by the official action; (2) the
> risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Santander Consumer USA, Inc.*, 2021 WL 4480574, at *8 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 96 S. Ct. 893, 903 (1976) (other citations omitted)).  A titled owner who leases a vehicle has a substantial property interest.  *See HVT*, 2018 WL 3134414, at *7; *Krimstock*, 464 F.3d at 255 (noting the "importance of a vehicle to an individual's ability to work and conduct the affairs of life," and the "serious harm" resulting from the "undue retention of a vehicle").

The Second Circuit held that a policy that places the burden of taking action to recover property on a claimant is a *per se* due process violation.  *McClendon v. Rosetti*, 460 F.2d 111, 115-16 n.4 (2d Cir. 1972) ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.") (citation omitted)); *HVT*, 2018 WL 3134414, at *9 ("the question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot.").  As a result, procedures relating to vehicle seizures should include that "notice must be sent to titled owners, registered owners and record lienholders of the seized vehicles. . . ; that notice must be sent promptly after the seizure; that notice must clearly provide an opportunity for a hearing; and that the government must be responsible for arranging and conducting the hearing. . . ." *HVT*, 2018 WL 3134414, at *9 (citing *Krimstock*, 306 F.3d at 68; *Ford Motor Credit Co.*, 394 F. Supp. 2d at 611; *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 1994 (1972)).   Even

22

temporary delays in providing the notice and hearing may constitutes a deprivation of due process rights. *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F. 3d 186, 192 (2d Cir. 2007) (citations omitted).

Applying these standards, the Court determines that Freeport's actions violated Toyota's Fourteenth Amendment due process rights, again as a matter of law. Freeport seized the Vehicle prior to providing any notice to Toyota. When it did provide notice, it was untimely as the letter sent 49 days after impounding the vehicle, and it was deficient as it failed to provide an opportunity for a hearing. Def. 56.1 ¶¶ 13-14, 26; *see also* Pl. Mem. Ex. M. Even if All County provided notice via letter five days after it impounded the Vehicle, it did not provide opportunity for a hearing, and as Freeport admits, All County did not have authority to release the Vehicle pursuant to its towing agreement with the Village. Def. 56.1 ¶¶ 12, 40-45; *see* Pl. Mem. Ex. D. Applying the *Mathews* factors, Plaintiff's property interests in the Vehicle outweighs Freeport's interest in collecting fines, and the undisputed lack of hearing requirement under the Scofflaw policy violates due process. As a result, Toyota has established a constitutional deprivation by failing to provide timely notice and a hearing before a neutral decisionmaker to review the warrantless seizure. Furthermore, Toyota has sufficiently established that the Scofflaw policy and the Village's deficient notice caused this constitutional deprivation satisfying the second element for this Section 1983 claim. Accordingly, the Court concludes that summary judgment in favor of Plaintiff is warranted as to its Fourteenth Amendment due process claim.

### C. Plaintiff's New York Constitutional Claims

Separately, Defendant seeks summary judgment as to Plaintiff's second cause of action and argues that because Toyota did not serve a notice of claim on Freeport pursuant to NY General Municipal Law § 50-e or on the State Attorney General pursuant to 28 U.S.C. §2403(b), its claims under the New York Constitution fail. Def. Mem. 15-21. Toyota counters that the "Scofflaw" policy is a matter of public interest and, thus, exempt from the notice of claim requirement, and that Plaintiff has challenged the constitutionality of Freeport's municipal Scofflaw policy as applied, not a New York statute, so notice under 28 U.S.C. § 2403(b) is not required. Pl. Reply at 11-12.

The New York Civil Practice Law and Rules ("NYCPLR") Section 9801 provides that:

> No action shall be maintained against the village for a personal injury or injury to property alleged to have been sustained by reason of the negligence or wrongful act of the village or of any officer, agent or employee thereof, unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.

NYCPLR § 9801. NY General Municipal Law Section 50-e provides that in any tort case where a notice of claim is required, it shall be served within 90 days after the claim arises. *See* NY Gen. Mun. Law § 50-e. Further, NY General Municipal Law Section 50-i provides that:

> No action or special proceeding shall be prosecuted or maintained against a city, county, town, village . . . unless, (a) a notice of claim shall have been made and served upon the city, county, town, village, fire district or school district in compliance with section fifty-e of this article, (b) it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such

notice ... and that adjustment or payment thereof has been neglected or refused, and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based. . . .

NY Gen. Mun. Law § 50-i. As a result, "[i]t is well settled that compliance with the notice of claim requirement is a condition precedent to commencement of an action against a municipality and the burden is on the plaintiff to plead and prove compliance with the notice of claim requirement." *Friel v. County of Nassau*, 947 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) (citation and alternation omitted); *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347-48 (E.D.N.Y. 2013) ("Under New York law, in order to bring state law claims against a municipality, a plaintiff must file a Notice of Claim within ninety days after accrual of the claim . . . in compliance with Section 50-e of the General Municipal Law. This requirement is mandatory in Federal Court and failure to comply results in dismissal of claims.") (citations omitted).

Nevertheless, "[t]he New York Court of Appeals has recognized an exception to the notice of claim requirement when an action is not brought merely to enforce a private right, but rather, to vindicate a public interest." *Chodkowski v. County of Nassau*, No. CV165770SJFGRB, 2017 WL 10637956, at *7 (E.D.N.Y. Nov. 30, 2017) (quoting *Turner v. County of Suffolk*, 955 F. Supp. 175, 176 (E.D.N.Y. 1997)); *see Mills v. Monroe Cnty.*, 59 N.Y.2d 307, 312, 464 N.Y.S.2d 709, 711 (1983) ("Because plaintiff never applied for leave to file late notice, her ability to maintain this action is contingent upon it being characterized as an attempt to vindicate a public interest.") *overruled on other grounds by Felder v. Casey,* 487 U.S. 131, 134, 138, 108 S. Ct. 2302, 2307 (1988) (holding that state procedural requirements may not be applied

to federal statutes).   "While '[a]ll actions brought to enforce civil rights can be said to be in the public interest,' the [New York] Court of Appeals has reserved the exception to the notice requirement for cases where actions 'are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group.'" *Scaggs v. New York State Dep't of Educ.*, No. 06-CV-799, 2007 WL 1456221, at *20 (E.D.N.Y. May 16, 2007) (quoting *Mills*, 464 N.Y.S.2d 709, 451 N.E.2d at 458).   A case where a plaintiff seeks to enforce a consent decree that would invalidate an allegedly unlawful municipal policy satisfies the public interest exception. *Germain v. County of Suffolk*, No. 07-CV-2523ADSARL, 2009 WL 1514513, at *8 (E.D.N.Y. May 29, 2009) ("in addition to seeking monetary damages for allegedly discriminatory conduct directed at her, the Plaintiff is also seeking to enforce a consent decree that would arguably require Suffolk County to offer *all* pregnant Park Department police officers light-duty assignments. In this regard, the Plaintiff's lawsuit seeks to vindicate not only the Plaintiff's civil rights but the interests of other pregnant officers."); *see also Kubicek v. Westchester Cnty.*, No. 08-CV-372KMK, 2009 WL 3720155, at *14 (S.D.N.Y. Oct. 8, 2009) (finding the public interest exception applicable where in addition to damages, the Plaintiff sought to enjoin an allegedly discriminatory employment policy) (collecting cases)).

Finally, as to Defendant's claim that Plaintiff was required to give notice the New York Attorney General pursuant to 28 U.S.C. § 2403(b), that statute provides:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein

> the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality.

28 U.S.C. § 2403(b). "The phrase 'statute of [the] State' precisely describes enactments of the state legislature . . . —a local ordinance, after all, is not normally referred to as a 'statute,' nor is it normally viewed as operating at the level of state governance." *International Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 341 (1st Cir. 1989); *cf. Raite Rubbish Removal Corp. v. Onondaga Cnty.*, 161 F.R.D. 236, 239 (N.D.N.Y. 1995) (Plaintiff clearly seeks to implicate Title 13–B [of the New York Public Authorities Law] as an unconstitutional infringement on the commerce clause . . . . [S]ince the statute is a state legislative enactment—the State has a right to intervene.").

Here, the Court initially concludes that while Plaintiff did not file a notice of claim with Freeport, the state claims fall within the public interest exception and should be allowed to proceed. Toyota is challenging the Village's Scofflaw policy and seeks not only compensatory damages but also declaratory relief as to the constitutionality of the policy. This lawsuit, therefore, seeks to vindicate not only the Plaintiff's civil rights but the interests of other "Scofflaws," and should it succeed, the policy would be invalidated. Accordingly, the Court concludes that the public interest exception to the notice of claim requirement applies to these claims and recommends denying Defendants' Motion as to this issue.

As to Freeport's argument that notification of the New York Attorney General was required under 28 U.S.C. § 2403(b), Toyota has challenged the constitutionality of the municipal Scofflaw policy, not a New York statute.   While the Village's correspondence referred to NYVTL § 1224, and it claims to rely on this statute in carrying out its Scofflaw program, Toyota does not seek a facial challenge to the constitutionality of this particular state statute, but rather Freeport's application of the municipal policy in this and similar instances.   NYVTL § 1224 relates to abandoned and unclaimed vehicles, and is unrelated to the Scofflaw policy.   Further, Freeport fails to cite to any authority indicating that the New York Attorney General must be notified 28 U.S.C. § 2403(b) when a constitutional challenge is brought to a village's application of a municipal policy, not state law, and the Court knows of none. *Compare International Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 341 (1st Cir. 1989) (constitutional challenge to a municipal ordinance is not "questioning the constitutionality of a *state statute*") (emphasis in original); *with Merrill v. Town of Addison*, 763 F.2d 80, 82-83 (2d Cir. 1985) (certification to the New York Attorney General was required because "[a]lthough Merrill's suit is against the Town of Addison, his claim is that a New York State statute [Section 305 of the New York Real Property Tax Law] is unconstitutional.").   Accordingly, the Court concludes that notice to the New York Attorney General is not required as no constitutional challenge to a state statute has been brought in this case and summary judgment should be denied as to this issue.

### D. Plaintiff's Declaratory Relief Claims

Next, Plaintiff seeks summary judgment on its claim for declaratory relief arguing that should a constitutional violation be found, its proposed declaratory judgment will guide Freeport in formulating a policy that is not violative of lienholders' constitutional rights. Pl. Mem. at 36-37. Toyota only seeks a declaratory judgment that the policy is unconstitutional under the Fourth and Fourteenth Amendments and asks the Court to refrain from re-writing the Scofflaw policy so that Freeport decisionmakers can draft a constitutional one. *Id.* The Village counters that should a constitutional violation be found, the Court is within its discretion to fashion declaratory relief compliant with the *Krimstock* series of cases as was done *Santander v. City of Glen Cove*, a similar case in this district.[2] Def. Mem. at 22-27.

The Declaratory Judgment Act states that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "[A] court may properly render declaratory judgment (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). The declaratory judgment remedy permits parties "to settle legal rights and

---

[2] This case, *Santander Consumer USA, Inc. v. The City of Glen Cove et al.*, 20-CV-03318 (E.D.N.Y. 2020), was before District Judge Joan M. Azrack and Magistrate Judge James M. Wicks and settled before dispositive motions were filed in the case.

remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012)

In granting declaratory relief, "the cost of additional procedures and the details of their implementation are matters peculiarly suited to the experience of the district court and the knowledge of the parties." *Krimstock*, 306 F.3d at 68-69 (it is up to "the district court, in consultation with the parties, to fashion appropriate procedural relief consistent with this opinion.") (citing *Fuentes*, 407 U.S. at 97 n.33) ("Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing. . . .")); *see also HVT*, 2018 WL 3134414, at *11 (declining to recommend a specific form for the notice and prompt post-deprivation hearing and ordering the parties to submit joint revised regulations or procedures for the Court's review).

Applying these standards, the Court concludes that Toyota is entitled to declaratory relief, because as explained above, Freeport's Scofflaw policy, as applied, violates the Fourth and Fourteenth Amendments. The Court declines, however, to fashion a new policy as the Village suggests. Accordingly, the Court recommends entering Toyota's proposed declaratory judgment that:

> Freeport's policy and custom of using license plate readers to seize vehicles registered to persons it labels a "Scofflaw" for failing to pay a certain amount of unpaid traffic and parking tickets violates the Fourth Amendment prohibition on unreasonable, warrantless seizures. Freeport's policy and custom of failing to hold a hearing before or after such a seizure relating to (a) whether the vehicles were properly seized or (b) the conditions Freeport attaches to the release of the seized

vehicles violates the Fourteenth Amendment protection against deprivations of property without due process of law.

Pl. Mem. at 36-37. Further, because Toyota expressly asked the Court that it not be involved in the process of amending Freeport's policies, *see* Pl. Mem. at 37, the Court recommends directing Freeport to submit proposed legislation within 60 days should this Report and Recommendation be adopted. *See Santander Consumer USA, Inc. v. Port Auth. of New York & New Jersey*, No. 20-CV-1997 (MKB), 2022 WL 3099239, at *11 (E.D.N.Y. Aug. 4, 2022) ("Defendant is required to submit proposed revised regulations or procedures to the Court for review" as Plaintiff expressed it did not want to be involved in rewriting Defendant's policy).

### E. Plaintiff's Replevin Claim

The parties agree that Plaintiff's claims for replevin is moot as Toyota has recovered the Vehicle, so this claim should be dismissed. *See* Pl. Reply at 11; Def. Mem. at 15-20.

### F. Damages

Finally, Toyota seeks compensatory damages in the amount of $3,601 stemming from the temporary loss of possession of the Vehicle for: (i) depreciation of the value between March 25, 2020 and October 22, 2020 totaling $1,018, and (ii) loss of use damages, or the payment stream of $369 per month which Toyota would have derived from the Lease Agreement while in the Village's possession for seven months, or $2,583. Pl. Mem. at 31; Pl. Reply at 14-15. Toyota claims that if it could have auctioned the Vehicle sooner, it would have used the proceeds to re-invest in a performing lease with a similar payment stream. Pl. Mem. at 35-36. Freeport argues

that depending upon the most recent verified mileage and date used, the depreciation damages range from a gain of $612 using October 7, 2020, to a loss of $212 using October 22, 2020, or a loss of $97 using November 11, 2020.  Def. Mem. at 9.  The Village further contends that the alleged loss of an income stream is speculative because the Lessees had payment difficulties before the vehicle was impounded, and Toyota's stated policy is to auction repossessed vehicles, not to lease them as used cars.  Def. Mem. at 9-10.  Plaintiff replies that "Toyota would take any number the Court deems reasonable given the information the Court has relating to damages, which are all positive, non-zero dollar figures" except calculating Freeport's value depreciation as of October 7, 2020.  Pl. Reply at 14-15.

Under New York law, plaintiffs can recover for the "loss of use" of their vehicle in the event a vehicle is damaged or destroyed.  *Quiller, Inc. v. United States*, No. 20 CIV. 2513 (AT), 2022 WL 4225542 (S.D.N.Y. Sep. 13, 2022) (citing *Koninklijke Luchtvaart Maatschaapij, N.V. v. United Techs. Corp.*, 610 F.2d 1052, 1055-56 (2d Cir. 1979).  The Second Circuit has held, however, that a lienholder's property interest in a seized vehicle is its present value.  *Ford Motor Credit Co.*, 503 F.3d at 191-92 ("[N]ot only is the present value of the claim diminished by the indeterminacy of its eventual realization, but Ford Motor Credit's property interest in the underlying asset suffers, as the vehicle depreciates over time."); *see also Santander Consumer USA, Inc. v. County of Nassau*, No. 20CV4790AMDSIL, 2022 WL 3647281, at *13 (E.D.N.Y. Aug. 24, 2022) (determining an issue of material fact remains on damages as the plaintiff failed to "cite any authority for the proposition that the scheduled

payments under a security agreement is a measure of damages arising from a due process violation").

Under these standards, while the parties agree on the method of calculating damages by using the J.D. Power Used Car Guide, their values differ creating an issue of material fact. Depreciation of the value of the Vehicle itself between should be calculated between March 25, 2020 and October 22, 2020 as Defendant provides no support for the contention that the Vehicle "was released" to All County on October 7, 2022. Nevertheless, the parties' values differ despite using the same Guide. Further, the car was seized rather than damaged or destroyed, so Plaintiff has not sufficiently established that it is entitled to loss of use damages in the amount of the lease for the seven months it was in Freeport's possession arising from the Fourth Amendment and Fourteenth Amendment violations. No further authority is provided by either party as to whether loss of use damages is appropriate as to these particular causes of action. Accordingly, the Court recommends denying summary judgment on the issue of damages and allow Toyota 60 days to request an inquest to establish damages. *See Santander Consumer USA, Inc.*, 2022 WL 3647281, at \*13 (allowing the plaintiff to request an inquest on damages when an issue of material fact remained); *HVT*, 2018 WL 1409821, at \*15 (denying summary judgment on damages and permitting the Plaintiff to move for compensatory damages by separate motion).

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends: (i) granting Plaintiff's Motion as to its first and third causes of action and declaratory

relief, but denying it as to compensatory damages; (ii) denying Defendant's Motion in its entirety; (iii) entering Toyota's proposed declaratory judgment; (iv) ordering Freeport to submit proposed legislation within 60 days; and (v) permitting Plaintiff to request an inquest on damages within 60 days.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:        Central Islip, New York
              January 24, 2023

                                                    /s/ Steven I. Locke
                                                    STEVEN I. LOCKE
                                                    United States Magistrate Judge