UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TOYOTA LEASE TRUST,

                        Plaintiff,

     -against-

VILLAGE OF FREEPORT,
ALL COUNTY HOOK UP TOWING, INC., and
JOSEPH CALVAGNO,

                      Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
20-CV-2207 (DG)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action is Plaintiff Toyota Lease Trust's ("Toyota" or "Plaintiff") Motion for Attorneys' Fees and Damages ("Toyota's Motion" or "Toyota Mot."). *See* DE [75]. Defendant The Village of Freeport ("Freeport" or "the Village") opposes. *See* DEs [76], [77], [82], [86].

By way of Complaint ("Complaint" or "Compl.") filed in this Court on May 15, 2020, Toyota commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of: (i) the Fourth and Fourteenth Amendments to the United States Constitution; (ii) Article I, §§ 6 and 12 of the New York State Constitution; and (iii) the New York General Obligations Law § 349 by Defendants Freeport, All County Hook Up Towing, Inc., d/b/a All County Towing & Recovery ("All County") and Joseph Calvagno ("Calvagno") (collectively, "Defendants"). *See* Compl., ¶¶ 1-6, 88-93, DE [1]. On June 13, 2022, the Court dismissed Defendants All County and Calvagno from this action. *See* Order dated June 13, 2022. On July 8, 2022, the parties filed their motions for summary judgment. *See* DEs [58]-[61]. This Court entered a Report and

Recommendation on January 24, 2023, recommending that Toyota's motion for summary judgment be granted on its Fourth and Fourteenth Amendments due process claims and as to its request for declaratory relief, but denied as to compensatory damages. *See* Report and Recommendation, DE [62], at 33-34. Judge Gujarati adopted this Report and Recommendation, granting Plaintiff's motion for summary judgment as to its Fourth and Fourteenth Amendments due process claims, denying it as to compensatory damages, reserving judgment on Toyota's request for declaratory relief, and granting Freeport's motion for summary judgment as to Plaintiff's replevin cause of action. *See* Order dated 03/30/2023. Plaintiff filed Toyota's Motion on June 16, 2023.[1] *See* Toyota Mot.; *see also* DE [81]. For the reasons set forth herein, the Court grants Toyota's Motion in part and denies it in part.

## I.    BACKGROUND

This litigation has an extensive history, familiarity with which is presumed. *See* DE [62] at 3-11 (detailing the underlying facts of this action). Thus, the Court only provides a summary of facts and procedural history necessary to decide the instant motion.

### A. Relevant Facts

The following facts are taken from the Court's Report and Recommendation, adopted by Judge Gujarati on March 30, 2023, and the parties' pleadings, declarations, and exhibits with respect to Plaintiff's Motion. *See* Report and Recommendation, DE [62]; Declaration of Holly Klinger in Support of Motion for

---

[1] The parties consented to this Court's jurisdiction with respect to Toyota's forthcoming motions on damages and attorneys' fees on June 15, 2023. *See* DE [74].

Damages and Attorneys' Fees ("Klinger Decl."), DE [75-2]; Declaration of Nicholas A. Duston ("Duston Decl."), DE [75-4]; Declaration of Helen Benzie in Opposition to Plaintiff's Motion for Compensatory Damages and Legal Fees and Expenses ("Benzie Decl."), DE [76]; Supplemental Declaration of Nicholas A. Duston ("Supp. Duston Decl."), DE [80-2].

### i. The Parties and the Lease

Plaintiff is a Delaware business trust and holds titles to leased vehicles in the United States.  Report and Recommendation at 3.  Freeport is a duly organized municipal corporation under New York state law.  *Id.*  All County is a towing company that has a contractual agreement with Freeport for towing and impounding services. *Id.*

On or about October 6, 2018, Millennium Super Store, LLC d/b/a Millennium Toyota Scion (the "Dealership") leased a 2018 Toyota Camry bearing VIN 4T1B11HK2JU149713 (the "Vehicle") to non-party customers Dorothy Kinsey and Sandra D. Kinsey (the "Lessees").  *Id.* at 4.  The lease ("Lease Agreement"), which the Dealership assigned to Plaintiff, provided for monthly payments of $369.00 beginning on October 6, 2018.  *Id.*; Klinger Decl., Exhibit ("Ex.") A at 1.  A failure to make a monthly payment or a seizure of the Vehicle constituted a default under the Lease Agreement, which triggered a right to possession by Toyota, among other remedies. Report and Recommendation at 4; Klinger Decl., Ex. A at 2.  On or about November 5, 2018, the New York State Department of Motor Vehicles ("NYSDMV" or "DMV") issued a title listing Toyota Lease Trust as the owner of the Vehicle.  Report and

Recommendation at 4. At all relevant times, Plaintiff remained the titled owner and lessor of the Vehicle. *Id.*

Dorothy and Sandra Kinsey defaulted on the Vehicle's payments beginning in on December 6, 2019, although they were late on payments beginning on November 17, 2018. *Id.*

### ii. *Freeport's Seizure of the Vehicle and Its Relevant Policies, Customs and Practices*

On February 5, 2020, All County towed the Vehicle at Freeport's direction. *Id.* The Village impounded the Vehicle under its "Scofflaw" policy because Sandra Kinsey had over $1,000 in unpaid tickets. *Id.* As of February 5, 2020, the Vehicle had an odometer reading of 26,269 miles. *Id.* Toyota initially learned of Freeport's impoundment from an unidentified individual calling on the Lessee's behalf on or about February 14, 2020, who notified Plaintiff that the car was "picked up by the city." *Id.* at 7. In addition, All County sent a letter to Toyota dated February 10, 2020, indicating that the Vehicle had been "taken into custody... and... held in [its] impound yard since: 2/5/2020," that it "claim[ed] a lien on this vehicle," and indicating that it would be "released to the owner" only "upon full payment of all charges accrued …." Benzie Decl., Ex. E.

Toyota later received correspondence from the Village dated March 25, 2020, notifying Plaintiff of the Vehicle's impoundment. Klinger Decl., Ex. B. Freeport refused to permit Toyota to retrieve the Vehicle unless Plaintiff agreed to pay various outstanding fines, penalties, towage and storage charges. Report and Recommendation at 8. Counsel for Toyota, Freeport and All County agreed on

October 22, 2020, that Plaintiff would recover possession of the Vehicle *pendente lite*. *Id.* at 9.  Toyota recovered the Vehicle on or about November 11, 2020.  *Id.* at 10.

### iii. *Toyota's Claimed Damages*

The J.D. Power Used Car Guide (the "Guide") is a vehicle pricing service that is recognized as an authoritative standard in the industry, and is an accurate indicator of used vehicle pricing, providing prices based upon comparable vehicle sales.  Report and Recommendation at 10.  The Guide lists various auction values that Toyota likely would have obtained for the Vehicle, had it been returned to Plaintiff's possession on the date of Freeport's letter to Toyota, March 25, 2020; when Plaintiff was informed by All County that it could retrieve the Vehicle, October 22, 2020; and when Toyota retrieved the Vehicle, November 11, 2020.  Klinger Decl., Ex. C (displaying the March 25, 2020, auction estimate report by the Guide for the Vehicle); Benzie Decl, Exs. K,  L (displaying the October 22, 2020, and November 11, 2020, auction estimate reports, respectively).  The Vehicle was sold for $14,800 on February 17, 2021.  Klinger Decl., Ex. D.

Toyota claims that it is entitled to depreciation damages of $3,665.  *See* Memorandum of Law in Support of Plaintiff's Motion for Damages and Attorneys' Fees ("Toyota Mem."), DE [75-1], at 2.  Plaintiff calculates this amount by subtracting the auction price of the Vehicle on February 17, 2021, *see* Klinger Decl., Ex. D, from the average auction value of the Vehicle according to the Guide on March 25, 2020, the date of Freeport's letter to Toyota.  *See id.*, Exs. B, C.  The Village, by contrast, asserts that Toyota's depreciation damages should be calculated from March 25,

2020, to October 22, 2020, the date on which Plaintiff was informed by All County that it could retrieve the Vehicle.  *See* Amended Memorandum of Law in Opposition to Plaintiff's Motion for Compensatory Damages and Legal Fees and Expenses ("Freeport Am. Opp."), DE [82-1], at 11-12; Report and Recommendation at 9.

Toyota further claims that it is entitled to an additional $2,583 in "loss of use" damages.  *See* Toyota Mem. at 2, 8-11.  Plaintiff argues that had the Vehicle been in its possession between March 25, 2020, and October 22, 2020, it could have re-leased the Vehicle or auctioned it and re-invested the auction proceeds in a performing lease with a similar payment stream of $369 per month.  *See id.*

Finally, Plaintiff asserts that it is entitled to nominal damages in the absence of compensatory damages.  *See* Toyota Mem. at 6.

## B. Procedural History

Based on the above, Toyota commenced this action by way of Complaint dated May 15, 2020 against Freeport, All County and Calvagno for: (i) deprivation of property by unreasonable seizure and without due process of law in violation of the Fourth and Fourteenth Amendments; (ii) deprivation of property by unreasonable seizure and without due process of law in violation of New York Constitution Article I Sections 6 and 12; (iii) declaratory relief against all Defendants that New York State Vehicle and Traffic Law §1224 is unconstitutional, as applied pursuant to Freeport's Scofflaw policy, under the United States and New York State Constitutions and that Defendants are liable under Section 1983 for all damages and attorneys' fees incurred; (iv) replevin; and (v) violation of New York State General Obligations Law

§ 349 against All County and Calvagno. *See* Compl. On December 17, 2021, the Village emailed Plaintiff's counsel a settlement offer for $900 (the "Settlement Offer") that Freeport refers to as an offer of judgment. *See* Freeport Am. Opp. at 7; Supp. Duston Decl., ¶ 39 and Ex. 5, DE [80-5]. The claims against All County and Calvagno were dismissed by stipulation, which was so ordered by Judge Gujarati on June 13, 2022. See DE [55]; Order dated June 13, 2022.

On July 8, 2022, the parties filed their motions for summary judgment. *See* DEs [58]-[61]. This Court entered a Report and Recommendation on January 24, 2023, recommending that Toyota's motion for summary judgment be granted on its Fourth and Fourteenth Amendments due process claims and as to its request for declaratory relief, but denied as to compensatory damages. *See* Report and Recommendation, DE [62], at 33-34. Judge Gujarati adopted this Report and Recommendation, granting Plaintiff's motion for summary judgment as to its Fourth and Fourteenth Amendments due process claims, denying it as to compensatory damages, reserving judgment on Toyota's request for declaratory relief, and granting Freeport's motion for summary judgment as to Toyota's replevin cause of action.. *See* Order dated 03/30/2023. At a status conference held on May 11, 2023, the parties stipulated that the only two issues remaining in the litigation were compensatory damages and attorneys' fees. *See* DE [69]. The parties consented to this Court's jurisdiction with respect to Toyota's forthcoming motions on these issues on June 15, 2023. *See* DE [74]. Plaintiff filed Toyota's Motion the next day. *See* Toyota Mot. The

Village filed its opposition on July 15, 2023.  *See* DEs [76], [77].  Toyota filed a reply in support of its Motion on August 14, 2023.  *See* DE [80] ("Toyota Reply").

The Parties subsequently filed motions to amend these pleadings.  On August 23, 2023,  Plaintiff filed a letter motion to amend its Motion by adding a Report and Recommendation entered the day before in this District recommending an attorneys' fees award to attorney Rudolph J. Meola, who also seeks an award of attorneys' fees in this case.  *See* DE [81].  On September 11, 2023, Freeport filed a letter motion to amend its Opposition to Toyota's Motion to correct typographical errors in the original.  *See* DE [82].  On October 2, 2023, the Village moved to amend its Amended Opposition to add a decision dated September 6, 2023, in this District awarding attorneys' fees to Mr. Meola, Nicholas Duston, Sarah Bouskila, Alexander Sokolof and Jessica Cunha Deo in a similar action.   *See* DE [86].  The Court granted these motions on February 6, 2024.  *See* Order dated February 6, 2024.

## II.    LEGAL STANDARDS

A number of legal standards come into play on Toyota's Motion, including those governing damages, attorneys' fees, offers of judgment and expert reports.

### A. Damages

#### i. *Nominal Damages*

Nominal damages are available to a plaintiff who has been denied procedural due process, but who cannot show actual injury.  *Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054 (1978).   Both nominal and compensatory damages are not awarded on the same claim, however.  *See Uzuegbunam v. Preczewski*, 592 U.S. ___, 141 S. Ct. 792, 800 (2021) (nominal damages are "the damages awarded by default

until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages").

### ii. Compensatory Damages

"The 'basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citing *Carey*, 435 U.S. at 254, 98 S.Ct. at 1047). This Court has already determined that "Freeport's warrantless seizure and seven-month retention of the Vehicle" formed a constitutional deprivation of Toyota's rights under the Fourth Amendment, *see* Report and Recommendation at 20, and that this seizure without notice deprived Plaintiff of its Fourteenth Amendment rights, *see id.* at 23; Order dated 03/30/2023 (adopting Report and Recommendation).

Section 1983 claims, like those for which Plaintiff now seeks damages, "sound in tort." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 689, 119 S. Ct. 1624, 1628 (1999). "Under general tort principles, compensatory damages are designed to place the plaintiff in a position substantially equivalent to the one that he would have enjoyed had no tort been committed." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015) (citing Restatement (Second) of Torts § 903, cmt. a (1977)). Compensatory damages "cannot be remote, contingent or speculative" and must be awarded on the basis of "reasonable certainty" that those damages have occurred. *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 290 (2d Cir. 2023); *see Brody v. Vill. of Port Chester*, No. 00CV7481, 2008 WL

3398111, at *4 (S.D.N.Y. Aug. 11, 2008) (denying damages award to plaintiff who had suffered only speculative harm from a due process violation).

Where damages sought are based on a hypothetical course of action by the party seeking them, that party must provide evidence to meet the "reasonable certainty" standard. *See, e.g., Koninklijke Luchtvaart Maatschaapij, N. V. v. United Techs. Corp.*, 610 F.2d 1052, 1058-59 (2d Cir. 1979) (upholding a district court's conclusion that evidence was "too speculative to establish…damage claims" where the stated policy and past practices of the party seeking damages contradicted the hypothetical injury claimed by that party in support of damages); *Trez Cap. (Fla.) Corp. v. Noroton Heights & Co., LLC*, No. 20CV9622, 2022 WL 4547412, at *4 (S.D.N.Y. Sept. 29, 2022) (excluding expert report based on lost profits damages that depended upon a vaguely-sketched, "hypothetical" joint venture partnership).

A plaintiff may not recover compensatory damages twice for the same injury. *Simuro v. Shedd*, No. 13CV00030, 2017 WL 3720766, at *8 (D. Vt. June 19, 2017) (citing *Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1063 (2d Cir. 1992); *Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989)).

Relevant here, a lienholder's property interest in a vehicle is its present value. *Santander Consumer USA, Inc. v. Cnty. of Nassau*, 623 F. Supp. 3d 6, 23 (E.D.N.Y. 2022) (citing *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007)).  As a vehicle depreciates over time, the lienholder's property interest in that vehicle "suffers." *Ford Motor Credit Co.*, 503 F.3d at 192.

## B. Attorneys' Fees and Costs

A prevailing party in a § 1983 claim should ordinarily be awarded attorneys' fees and costs. *Perkowski v. Town of Brookhaven*, No. 18CV5480, 2023 WL 5510639, at *2 (E.D.N.Y. Aug. 25, 2023) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see* 42 U.S.C. § 1988(b).  To determine reasonable attorneys' fees, the Supreme Court and the Second Circuit have held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required—creates a "presumptively reasonable fee." *Won v. Gel Factory, Corp.,* No. 20CV5269, 2022 WL 903121, at *8 (E.D.N.Y. Jan. 25, 2022), *report and recommendation adopted,* 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022) (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  This method "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Won,* 2022 WL 903121, at *8 (quoting *Perdue v. Kenny A. Ex rel. Winn.*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672 (2010)).

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*, No. 13CV5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016).  "The moving party must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done." *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020) (quoting *Riley v. City of New York*, No. 10CV2513, 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015)

(internal quotation marks omitted)).  "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Feltzin v. Union Mall, LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (citation omitted).  "When reviewing the overall reasonableness of a fee application, 'a district court is not required to set forth item-by-item findings concerning what may be countless objections to individual billing items.'"  *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09CV3312, 2018 WL 2766139, at *8 (E.D.N.Y. June 8, 2018), *aff'd*, 790 F. App'x 289 (2d Cir. 2019) (citing *Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01CV2762, 2007 WL 2775144, at *13 (S.D.N.Y. Sept. 25, 2007)).  "Rather, if upon review of the contemporaneous time records the court 'determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court [in its discretion] may… account for such over-billing in an across-the-board percentage deduction.'"  *Id.* (citing *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08CV1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010)).

Under the "forum rule," the reasonable hourly rate is "'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community… where the district court sits.'"  *E. Sav. Bank, FSB v. Whyte*, No. 13CV6111, 2015 WL 790036, at *8 (E.D.N.Y. Feb. 24, 2015); *see Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011).  To determine this amount, courts consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service

properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*ComLab, Corp. v. Kal Tire*, No. 17CV1907, 2019 WL 2144307, at *4 (S.D.N.Y. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2137135 (S.D.N.Y. May 16, 2019) (citations omitted).   Separate findings for each factor, however, are unnecessary.  *See Montefiore Med. Ctr. v. Local 272 Welfare Fund*, No. 09CV3096, 2019 WL 4565099, at *5 (S.D.N.Y. Sep. 19, 2019) (citation omitted).   Rather, the factors should be considered together, and no one factor is dispositive.  *See id.* (citing *C.B. v. New York City Dep't of Educ.*, No. 18CV7337, 2019 WL 3162177, at *5 (S.D.N.Y. Jul. 2, 2019)).

In applying the "forum rule," the district courts in this Circuit have recognized that no bright line exists between reasonable rates for the Eastern and Southern Districts of New York.  Indeed, judges in this District have observed that the two districts "form a unitary market for legal services." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10CV2262, 2019 WL 2870721, at *4 (E.D.N.Y. June 18, 2019), *report and recommendation adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019); *see also United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F. Supp. 2d 484, 492 (E.D.N.Y. 2012).

## C. Rule 68 Offers of Judgment

Rule 68(a) of the Federal Rules of Civil Procedure provides:

At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.  If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service.  The clerk must then enter judgment.

Rule 68(d) contains a fee-shifting mechanism:  Under Rule 68(d), "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."   Rule 68(d); *see Stanczyk v. City of New York*, 752 F.3d 273, 280-81 (2d Cir. 2014).

"Rule 68(a)'s command that the clerk must enter judgment is mandatory and absolute."  *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 400 (2d Cir. 2019).  A "critical feature" of Rule 68(a) is that an offer of judgment "***allows judgment to be taken against the defendant***."  *Marek v. Chesny*, 473 U.S. 1, 6, 105 S. Ct. 3012, 3015 (1985) (emphasis in original).  Rule 68 does not apply to an offer of judgment that does not comply with the Rule's requirements.  *See Shuler v. Liberty Consulting Servs., Ltd.*, No. 20CV5779, 2022 WL 1552039, at *4 (E.D.N.Y. Apr. 4, 2022), *report and recommendation adopted*, 2022 WL 1564109 (E.D.N.Y. May 2, 2022).  Further, an offer of judgment that is ambiguous due to contradictory provisions is invalid under Rule 68.  *See Struthers v. City of New York*, No. 12CV242, 2013 WL 5407221, at *5 (E.D.N.Y. Sept. 25, 2013).  "Ambiguous offers should be clarified or stricken to further the purposes of Rule 68 to encourage settlement and to protect the ability of parties to make reasonable decisions regarding the conduct of litigation."  *City of*

14

*Almaty, Kazakhstan v. Sater*, No. 19CV2645, 2022 WL 2666018, at *2 (S.D.N.Y. July 11, 2022) (citation omitted).

### D. Expert Reports

An expert report may not contain opinions on a question of law. *Navigators Ins. Co. v. Goyard, Inc.*, 623 F. Supp. 3d 220, 225 (S.D.N.Y. 2022). "Courts within this Circuit have not hesitated to preclude expert reports and testimony that 'embod[ied] legal conclusions [and] exceeded the permissible scope of opinion testimony under the Federal Rules of Evidence.'" *GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 343 (N.D.N.Y. 2013) (citing *Ebbert v. Nassau County*, No. CV 05–5445, 2008 WL 4443238, *12–13 (E.D.N.Y. Sept. 26, 2008)). In fact, the Second Circuit requires "'exclusion of expert testimony that expresses a legal conclusion.'" *Ebbert*, 2008 WL 4443238 at *4 (citing *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)). Legal arguments are "to be made by counsel" and should be stricken when they are present in an expert report. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 49 (S.D.N.Y. 2016).

## III.   DISCUSSION

### A. Toyota's Motion for Damages

Initially, Plaintiff seeks $3,665 in depreciation damages, calculated as the difference between the average auction value of the Vehicle on March 25, 2020, according to the Guide, and the amount for which Toyota auctioned the Vehicle on February 17, 2021. *See* Toyota Mem. at 1-2. For March 25, 2020, the Guide listed the average auction price as $18,465. *See* Klinger Decl., Ex. C. The Vehicle was auctioned for $14,800. *See id.*, Ex. D. The average auction value for the Vehicle on

October 22, 2020, was listed by the Guide as $18,233.  *See* Benzie Decl., Ex. K. Freeport argues in opposition that depreciation damages should be calculated from March 25, 2020, to October 22, 2020, the date on which Toyota was told it could retrieve the Vehicle.  *See* Freeport Am. Opp. at 11-12.

The Court agrees with the Village.[2]  This Court has already determined that "[d]epreciation of the value of the Vehicle itself between should be calculated between March 25, 2020, and October 22, 2020."  Report and Recommendation at 33. Moreover, the purpose of compensatory damages in this case is to permit Plaintiff to recover for injuries caused by Freeport's deprivation of Toyota's constitutional rights. *See Townes*, 176 F.3d at 147.  Toyota had the opportunity to recover the Vehicle on October 22, 2020, at which point this deprivation had ended.  *See* Report and Recommendation at 9.  Plaintiff has not explained why the Vehicle was not auctioned until nearly four months later, nor has it explained why the Village is responsible for that delay.  Accordingly, the Court awards Toyota depreciation damages in the amount of $232, the difference between the Guide's average auction value on March 25, 2020, and October 22, 2020.

Plaintiff also seeks damages for "loss of use" of the Vehicle between March 25, 2020, and October 22, 2020.  *See* Toyota Mem. at 2, 5, 8-11.  It argues that the Vehicle "could have been re-leased (or sold with the proceeds invested in a new lease with a

---

[2] Toyota agrees to the use of the "average" auction value listed by the Guide, *see* Toyota Reply at 23-24.  Freeport provides no definition of the "average," "low" or "high" auction values listed by the Guide. Accordingly, the Court elects to use the "average" auction value.

similar stream of payment)."[3]  *Id.* at 9.  Toyota, however, has failed to show damages

within "reasonable certainty" based on either theory.  *See Bohnak*, 79 F.4th at 290.

Another court in this Circuit in a similar case recently rejected a plaintiff-lienholder's

nearly identical claim for damages equal to the value of auctioning a vehicle and re-

investing the auction proceeds in a new vehicle, then leasing the new vehicle:

> This argument is flawed because it would appear to allow for double
> recovery by [the lienholder]—*i.e.*, both the value of possessing the
> Vehicle, and the value of a separate income stream derived from leasing
> a different vehicle purchased with the proceeds from auctioning the
> Vehicle…. [The lienholder] has not come forward with any authority to
> support the even more attenuated proposition that the proper measure
> of damages for a due process violation is what [it] would have been paid
> based on a hypothetical future auction of the seized vehicle and a
> hypothetical future security agreement involving a different vehicle.

*TD Auto Fin. LLC v. Cnty. of Putnam*, No. 21CV9080, 2023 WL 6295116, at *15

(S.D.N.Y. Sept. 27, 2023).  As in that case, Toyota here has provided no factual basis

or caselaw support for its claim for damages under this theory.  This measure of

damages, therefore, is too speculative to pass muster.  *See Trez Cap. (Fla.) Corp.*,

2022 WL 4547412, at *4 (holding that lost profits damages were not provable to a

reasonable degree of certainty where those damages were based on a hypothetical

joint venture partnership in which no agreement had been reached).  Moreover,

Toyota claims it is entitled to damages based on this speculative income stream from

March 25, 2020, to October 22, 2020.  This assertion assumes Plaintiff would have

immediately auctioned the Vehicle after repossessing it.  *See* Toyota Mem. at 5.  But

---

[3] Toyota emphasizes that it does *not* seek damages based on lost income from the lease of Dorothy
Kinsey and Sandra D. Kinsey, which was in default when the Vehicle was seized.  *See* Toyota Reply
at 24.

Toyota did not auction the Vehicle until February 17, 2021, despite recovering it on November 11, 2020.  *See* Klinger Decl., Ex. D; Report and Recommendation at 9. Because Toyota delayed exercising its ability to auction the vehicle for three months, it cannot demonstrate it is entitled to a full seven months of "loss of use" damages with reasonable certainty.  *See Bohnak*, 79 F.4th at 290.

Toyota also fails to prove damages based on the theory that it could have re-leased the Vehicle if the Village had not seized it.  As this Court previously stated, "[t]he Second Circuit has held… that a lienholder's property interest in a seized vehicle is its present value."  Report and Recommendation at 32 (citing *Ford Motor Credit Co.*, 503 F.3d 186, 191-92 (2d Cir. 2007)).  Plaintiff has cited no authority supporting its argument that the correct measure of damages where a lienholder's asset is seized is instead the income the lienholder could have earned by terminating the existing lien and creating a new one.  Toyota cites to *Ford Motor Credit Company*, 503 F.3d at 194; *Ferrari v. County of Suffolk*, 845 F.3d 46, 65 (2d Cir. 2016); *In re Metmor Financial, Incorporated*, 819 F.2d 446, 448-449 (4th Cir. 1987); and *United States v. James Daniel Good Real Property*, 510 U.S. 43, 54, 114 S. Ct. 492, 501 (1993) for the principle that Plaintiff had an interest in and a right to receive lease income from the Vehicle under a new lease or from another vehicle purchased with the auction proceeds of the Vehicle during the roughly seven months between March 25, 2020, and October 22, 2020.  *See* Toyota Mem. at 8-9.  None of these cases is persuasive.

In *Ford Motor Credit Company*, the Second Circuit held that lienholder Ford Motor Credit had a property right to a seized vehicle in which it had a secured interest

and, consequently, a property interest in the present value of that vehicle (as opposed to merely a part of the proceeds after the vehicle's eventual auction). 503 F.3d at 191-92. The *Ford Motor Credit Company* court, however, did not address damages or lease or rental payments. The *Ferrari* court merely cited *Ford Motor Credit Company* in dicta for the principle that an individual may have "a financial interest…derived from the rental value" of a seized property for the purposes of determining what process is sufficient, but that court did not examine this concept further. 845 F.3d at 65. The Fourth Circuit in *In re Metmor Financial*, cited by the court in *Ford Motor Credit Company*, held that where a horse ranch encumbered by a secured note, which was accruing interest, was forfeited to the United States government, the government was obligated to continue paying the lienholder interest payments on the principal of the note. 819 F.2d at 451. Similarly, in *United States v. James Daniel Good Real Property*, the Supreme Court found that a landlord's loss of rental income from his existing tenants when the government seized his rental property warranted due process protection. 510 U.S. at 54, 114 S. Ct. at 501. But in *In re Metmor Financial*, the lienholder received interest payments pursuant to an ***existing*** lien, and the landlord in *James Daniel Good Real Property* received rental income due to an ***existing*** lease. Toyota, by contrast, emphatically does not claim "loss of use" damages based on any existing lien. *See* Toyota Reply at 24. These cases therefore are distinguishable.

Further, Toyota asserts that it was "seeking to repossess the Vehicle before Freeport seized it" and could have done so, absent the Village's actions. Toyota Mem.

at 5, 10.  Plaintiff, however, auctioned the Vehicle, rather than re-leasing it, when it regained possession.  Toyota therefore has not proven damages with "reasonable certainty" based on an income stream from a hypothetical new lease of the Vehicle. *See Bohnak*, 79 F.4th at 290.  Accordingly, Toyota's Motion for Damages is granted in part and denied in part, and Plaintiff is awarded $232 in compensatory damages. Because Toyota recovers compensatory damages, the Court does not award nominal damages.  *See Uzuegbunam*, 592 U.S. ___, 141 S. Ct. 792, 800 (2021).

## B.  Toyota's Motion for Attorneys' Fees

### i.  *Toyota's Requested Attorneys' Fees are Largely Reasonable.*

Here, Plaintiff seeks an award of $192,674.50 in fees prior to filing its reply and $57,269 in fees spent preparing its reply, *see* Toyota Reply at 25, based on the following hourly rates:  (i) $630 for Rudolph J. Meola;  (ii) $570 for Nicholas Duston; (iii) $425 for Alyssa Hicks, Sarah Bouskila, Olivia Italiano, Benjamin Schwartz and Alex Sokolof; and (iv) $250 for Jessica Cunha Deo.[4]  *See* Toyota Mem. at 13; Duston Decl, ¶ 9.  Plaintiff also seeks an award of $738.60 in costs.  *See* Toyota Mem. at 19.

### 1.  Reasonableness of Hourly Rates Requested

The Court finds an hourly rate of $630 for Rudolph J. Meola reasonable.  Mr. Meola "is the principal of Meola Law Firm and has thirty years of experience practicing law primarily representing motor vehicle financial services companies."

---

[4] The Declaration of Nicholas A. Duston, DE [75-4], lists Ms. Cunha Deo's rate as $200, *see id.* at 4, but provides a table of billing entries that lists her rate as $250 and uses that number to reach the final attorneys' fee calculation.  *See id.* at Ex. 1.  Accordingly, the Court considers the reasonableness of $250 per hour for Ms. Cunha Deo's services.

*See* Duston Decl., ¶ 9(a).  His substantial experience informs the Court's determination.  *See ComLab, Corp.*, 2019 WL 2144307, at *4, *report and recommendation adopted*, 2019 WL 2137135.  The Southern District of New York, which forms a "unitary market for legal services" with this district, *Luca*, 698 F. Supp. 2d at 296, recently observed that § 1983 attorneys' fees have been "increasing over time." *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (awarding a rate of $650 per hour to a partner in a § 1983 action); *see also Almond v. PJ Far Rockaway, Inc.*, No. 15CV06792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("[A]ttorney's fees, like other goods and services, increase in cost with inflation.").  Moreover, Mr. Meola was recently awarded between $600 and $630 per hour in three similar actions.  *See HVT, Inc. v. Port Auth. of New York & New Jersey*, No. 15CV5867, 2023 WL 5441898, at *10 (E.D.N.Y. Aug. 22, 2023), *report and recommendation adopted*, No. 15CV5867, 2023 WL 6035673 (E.D.N.Y. Sept. 15, 2023); *Santander Consumer USA, Inc. v. City of Yonkers*, No. 20CV4553, 2022 WL 4134718, at *4 (S.D.N.Y. Sept. 12, 2022); *Santander Consumer USA, Inc. v. Port Auth. of New York & New Jersey*, No. 20CV1997, 2023 WL 5758995, at *4 (E.D.N.Y. Sept. 6, 2023).  Accordingly, the Court finds that $630 per hour is an appropriate rate of attorneys' fees for Mr. Meola's efforts, considering his long career in the same type of litigation as the present case.

Mr. Duston's requested hourly rate of $570 is also reasonable.  Mr. Duston, a member of Norris McLaughlin, P.A., has "thirteen years of experience practicing law," and has appeared "pro hac vice around the country in relation to cases involving the

recovery of motor vehicles" in eleven federal districts.   Duston Decl., ¶¶ 1, 9(b).
Approximately three years ago, two partners in an unreasonable search-and-seizure
§ 1983 action were awarded $650 and $600 per hour in recognition of their experience
in the subject matter of the litigation at hand.   *See HomeAway.com, Inc*., 523 F. Supp.
3d at 597-98.   Similarly, the Southern District of New York two years ago awarded
$550 per hour to two partners in a § 1983 action based on deprivation of a plaintiff's
Fourth and Fourteenth Amendment Rights.   *See Nnebe v. Daus*, No. 06CV04991,
2022 WL 612967, at *5 (S.D.N.Y. Mar. 1, 2022).   Accordingly, the Court approves a
rate of $570 hourly for Mr. Duston for purposes of calculating the lodestar fee award
in this action.

The Court also concludes that the requested hourly rate of $425 per hour for
each associate is reasonable.   The associates who worked on this case—Alyssa Hicks,
Sarah Bouskila, Olivia Italiano, Benjamin Schwartz and Alex Sokolof—have between
three and eight years' experience.   *See* Duston Decl., ¶¶ 9(d-h).   Courts in the
Southern District have frequently awarded comparable amounts in other actions
involving corporate clients.   *See, e.g., United States ex rel. Yasti v. Nagan Constr*., No.
17 CIV. 7163 (AT), 2021 WL 1063437, at *4 (S.D.N.Y. Mar. 18, 2021) (awarding a
$600 court-created blended hourly rate for an associate who began working on the
action with four years' experience and had eight years' experience at the time the
attorneys' fee motion was filed); *KGK Jewelry LLC v. ESDNetwork*, No. 11CV9236,
2015 WL 2129703, at *2 (S.D.N.Y. May 6, 2015) (awarding $437 per hour to an
associate with seven years of experience); *United States ex rel. Fox Rx, Inc. v.*

*Omnicare, Inc.*, No. 12CV275 DLC, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) (awarding $631.75 per hour and $541.50 per hour to attorneys with eight and four years' experience, respectively).

Jessica Cunha Deo's requested hourly rate of $250 per hour is not reasonable, however. "The 'prevailing rate' for paralegals in this district is between $100 and $200 per hour." *Yasti*, 2021 WL 1063437, at *5 (collecting cases); *see 1979 Fam. Tr. Licensor, LLC v. Darji*, No. 19CV4389, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) (collecting cases) ("Courts in this district typically approve paralegal hourly rates between $150 and $200.") Moreover, Plaintiff cites no case supporting an hourly rate of $250 for a paralegal in the Eastern or Southern Districts of New York. Ms. Cunha Deo has worked as a paralegal for fourteen years and has specific experience in cases similar to the action at hand. *See* Duston Decl., ¶ 9(i). Accordingly, an hourly rate at the high end of the prevailing range is warranted: the Court awards Ms. Cunha Deo $200 per hour.

## 2. Reasonableness of Hours Expended

Toyota requests fees for 328.2 hours of work performed in this case before the Village filed its Opposition to Toyota's Motion. *See* Duston Decl., Ex. 1. The Court, after a detailed review of Plaintiff's counsel's billing records for this period, finds that Toyota's counsel has complied with the requirement to submit "contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done." *Torcivia,* 437 F. Supp. at 250-51. Accordingly, it approves Plaintiff's attorneys' hours worked for purposes of the lodestar fees calculation, with

the exception of  Benjamin D. Schwartz's entry on May 11, 2023, which includes travel time billed at his full rate.  Travel time is generally approved by courts at half the usual billing rate.  *See C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17CV7632, 2018 WL 3769972, at *10 (S.D.N.Y. Aug. 9, 2018).  Because this entry is block-billed with other legal work, the Court will award fees for only 2 of the 3.1 hours billed by Mr. Schwartz in this entry.

Based on the analysis set forth above, below is a summary of the Court's award for reasonable attorneys' fees incurred, exclusive of attorney hours spent on Toyota's Reply:

| Name | Rate | Hours | Total Fees |
|---|---|---|---|
| Rudolph Meola | $630 | 85.9 | $54,117 |
| Nicholas Duston | $570 | 182.5 | $104,025 |
| Alyssa Hicks | $425 | 3.7 | $1,572.50 |
| Olivia Italiano | $425 | 38.4 | $16,320 |
| Sarah Bouskila | $425 | 15.7 | $6,672.50 |
| Benjamin Schwartz | $425 | 18.3 | $7,777.50 |
| Alex Sokolof | $425 | 2.7 | $1,147.50 |
| Jessica Cunha Deo | $200 | 2.3 | $460 |
| **TOTAL** | | | **$192,092** |

Plaintiff's request of fees for 102.4 hours of work on Toyota's Reply is not reasonable.  "If upon review of the contemporaneous time records the court 'determines that the number of hours expended was excessive, redundant or

otherwise unnecessary, the court [in its discretion] may… account for such over-billing in an across-the-board percentage deduction.'" *Safeco Ins. Co. of Am.*, 2018 WL 2766139, at *8 (citing *Reiter*, 2007 WL 2775144, at *13).   These hours represent almost 25% of total fees sought, spent on one reply brief largely dedicated to fee litigation.   A district court must "impose some degree of proportionality between the fees for the underlying merits litigation and fees for fee litigation." *Brunswick Recs. Corp. v. Lastrada Ent. Co.*, No. 23CIV100LAKGWG, 2023 WL 8703705, at *8 (S.D.N.Y. Dec. 15, 2023) (citation omitted).   A percentage-based reduction in attorneys' fees incurred preparing Toyota's Reply is warranted.   *See Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 217 (E.D.N.Y. 2019) (noting that 25% of hours in a case spent on fee briefing was excessive and justified an overall 30% fee reduction); *Schwartz v. United States Drug Enf't Admin.*, No. 13CV5004, 2019 WL 1299192, at *11 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (concluding that 90 hours spent on a fee motion was excessive and reducing fees on that motion by a set percentage); *N.G. v. New York City Dep't of Educ.*, No. 21CV8488, 2024 WL 133615, at *8 (S.D.N.Y. Jan. 12, 2024) (describing 76.2 hours and 70 hours billed to fee motions in two litigations as "egregious").   Accordingly, the Court applies a 25% reduction to Toyota's hours billed preparing its Reply.

Based on the analysis set forth above, below is a summary of the Court's award for reasonable attorneys' fees incurred preparing Toyota's Reply:

| Name | Rate | Hours | Total Fees |
|------|------|-------|------------|
| Rudolph Meola | $630 | 31.7 | $19,971 |
| Nicholas Duston | $570 | 50.1 | $28,557 |
| Benjamin Schwartz | $425 | 20.6 | $8,755 |
| TOTAL | | | $57,283 |
| **TOTAL LESS 25% DEDUCTION** | | | **$42,962.25** |

Accordingly, the Court awards Toyota a total of $235,054.25 ($192,092 + $42,962.25) in attorneys' fees.

### 3. Costs

Plaintiff seeks $738.90 in costs.  In support of its application, Toyota points to the $400 filing fee it paid to initiate this action, *see* DE [1], and attaches invoices for service of process to the Defendants, totaling $338.60, *see* Duston Decl., Ex. 2.  "Costs relating to filing fees [and] process servers ... are ordinarily recoverable." *Cardoza v. Mango King Farmers Market Corp.*, No. 14-cv-3314, 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015).  Accordingly, the Court awards Plaintiff the costs it seeks. *See Perkowski*, 2023 WL 5510639, at *2.

### ii. Rule 68 does not apply to the Village's Settlement Agreement.

In its Opposition, the Village relies on what it characterizes as an offer of judgment to Toyota's counsel for attorneys' fees and costs. *See* Freeport Am. Opp. at 7.  On December 17, 2021, counsel for the Village sent Toyota's lawyers the Settlement Offer.  *See* Supp. Duston Decl., ¶ 39 and Exhibit 5.  Under Rule 68(d), if

a qualified offer of judgment pursuant to 68(a) is made, and the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.  Freeport argues that this Settlement Offer qualifies as an offer of judgment under Rule 68(a).  The Court disagrees.

As set forth above, Rule 68 does not apply to a settlement offer that is ambiguous or that does not comport with the requirements of Rule 68.  *See City of Almaty, Kazakhstan*, 2022 WL 2666018, at *2; *Shuler*, 2022 WL 1552039, at *4; *Struthers*, 2013 WL 5407221, at *5.  The Settlement Offer fails on both standards.  The email sent on December 17, 2021, to Nicholas A. Duston states that the Village "offers to allow the plaintiff Toyota Lease Trust to take a judgment against it," a required element of a valid Rule 68 offer.  *See* Settlement Offer at 2; *Marek*, 473 U.S. at 6, 105 S. Ct. at 3015 ("The critical feature of [Rule 68(a)] is that the offer be one that *allows judgment to be taken against the defendant*"); *Mei Xing Yu*, 944 F.3d at 400.  The attachment to that email, entitled "Judgment and Order," however, states that "the Parties shall effectuate a *stipulation of dismissal* with prejudice of all claims raised in the Lawsuit."  Settlement Offer at 10.  An offer of judgment will result in the clerk entering judgment against one party, *see* Rule 68(a), not a stipulation of dismissal.  *See Marek*, 473 U.S. at 6, 105 S. Ct. at 3015; *Cabala v. Crowley*, 736 F.3d 226, 230 (2d Cir. 2013) (distinguishing between the procedural effects of an offer of judgment and a settlement agreement).

Because the "critical feature," *Marek*, 473 U.S. at 6, 105 S. Ct. at 3015, of the Settlement Offer contains contradictory provisions, it is ambiguous and therefore invalid under Rule 68(a).  *See Struthers*, 2013 WL 5407221, at *5.  Further, as Toyota's counsel points out, the Settlement Offer contains a clause releasing the Village from liability for "any failure to perform its obligations" under the Settlement Offer should events like "an act of God" or "hurricane" occur.  *See* Settlement Offer at 12; Toyota Reply at 17-18.  This provision could be read to release Freeport from the terms of any judgment entered against it, and a federal court will not enter a judgment subject to this kind of *force majeure* clause.  As a result, the Settlement Offer is not compliant with Rule 68, and Rule 68(d) does not apply to shift any fees. *See Shuler v. Liberty Consulting Servs.*, 2022 WL 1552039, at *4.

### iii. The Expert Report of Laura Johnson is of Limited Utility.

In support of its Amended Opposition, Freeport filed an affidavit and expert report created by Laura S. Johnson, an attorney who serves as the Legal Operations Manager of Sterling & Sterling, LLC, doing business as Sterling Analytics of Woodbury, New York.  *See* Affidavit of Laura S. Johnson ("Johnson Aff."), DE [76-1]; *id.* at ¶ 1.  In this role, Ms. Johnson states that she supervises the review of billions of dollars in annual legal bills, has evaluated the reasonableness of legal bills in fee disputes, and has testified on the reasonableness of attorneys' fees in state and federal court.  *Id.*, ¶ 2.  Ms. Johnson explains that she prepared her expert report by "familiariz[ing] [her]self generally with Second Circuit and New York law," *id.*, "compar[ing]" the time entries submitted by Toyota in support of the instant motion

28

"to accepted standards of reasonable and appropriate billing as set forth in relevant case law from New York, the Second Circuit, and other jurisdictions," *id.*, and reviewing the "vast library" belonging to her employer of "caselaw, statutes, model A.B.A. opinions, and law review articles," *id.*, Ex. B, ¶ IV(a).   Ms. Johnson recommends awarding Plaintiff $60,741.87 in attorneys' fees if Rule 68 does not apply to shift fees after the Village sent Toyota the Settlement Offer. *See id.*, Ex. D.

Ms. Johnson's expert report, *see id.*, Ex. B, is compromised almost wholly of legal analysis.  The Court does not consider those portions of her report that are legal conclusions in ruling on the instant motion, because the Second Circuit requires "exclusion of expert testimony that expresses a legal conclusion."  *Ebbert*, 2008 WL 4443238, at *13 (citing *Hygh*, 961 F.2d at 363); *see, e.g., Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 49 (S.D.N.Y. 2022) (striking an expert report that conducted "a legal analysis that [was] the province of the court"); *K.O. v. New York City Dep't of Educ.*, No. 20CV10277, 2022 WL 1689760, at *11 (S.D.N.Y. May 26, 2022) (finding that an expert's conclusion of whether legal fees were reasonable "offer[ed] advice on an ultimate issue before the Court" and was inadmissible); *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 19CV839, 2021 WL 4170757, at *18 (D. Conn. Sept. 14, 2021) (excluding the portions of testimony in which an expert on attorneys' fees relied on legal conclusions); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 331 (E.D.N.Y. 2014) (declining to rely on legal conclusions asserted by an expert).   Moreover, the Court notes that it is capable of deciding a motion for attorneys' fees without expert

analysis.  Accordingly, Ms. Johnson's analysis does not alter the Court's calculation of Plaintiff's fee award.

## IV.   CONCLUSION

For the reasons set forth above, the Court grants Toyota's Motion in part and denies it in part.  The Court awards Plaintiff $232 in depreciation damages, $235,054.25 in attorneys' fees and $738.90 in costs, for a total of $236,025.15.


Dated:        Central  Islip,  New  York                   **SO ORDERED.**
              February 15, 2024

                                                           /s/ Steven I. Locke
                                                           STEVEN I. LOCKE
                                                           United States Magistrate Judge